IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CV-594-D

| | |
|---|---|
| MICHAEL C. HARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Michael C. Harrison ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' motions for judgment on the pleadings. D.E. 14, 16. Both filed memoranda in support of their respective motions. D.E. 15, 20.[2] The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 8 June 2016 Text Ord. For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[2] The initial memorandum filed by the Commissioner (D.E. 17) related to a different case. At the court's direction (D.E. 19), she filed a corrected memorandum (D.E. 20).

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 23 July 2012 and an application for SSI on 6 November 2012, alleging a disability onset date of 1 November 2010 in both. Transcript of Proceedings ("Tr.") 22. The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 22. On 17 November 2014, a video hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by counsel, and a vocational expert testified. Tr. 38-69. The ALJ issued a decision denying plaintiff's claims on 9 January 2015. Tr. 22-33. Plaintiff timely requested review by the Appeals Council (Tr. 18) and subsequently submitted additional medical records to the Appeals Council for the first time for the period 6 October 2014 to 9 July 2014 (8-17; 439-45). On 20 October 2015, the Appeals Council admitted the additional medical records for dates prior to issuance of the ALJ's decision, 6 October 2014 to 5 January 2015 (Tr. 439-45), but did not admit the records postdating the decision (Tr. 9-17) on the grounds that they did not relate to the period of alleged disability at issue. *See* Tr. 2, 5. Notwithstanding admission of the additional evidence, the Appeals Council denied the request for review. Tr. 1.

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 16 November 2015, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5).

### B.     Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt.

P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[4]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C. ALJ's Findings

Plaintiff was 50 years old on the alleged onset date of disability and 54 years old on the date of the hearing. *See, e.g.*, Tr. 31 ¶ 7. The ALJ found that plaintiff has a limited education (Tr. 31 ¶ 8) and past relevant work as a warehouse worker (Tr. 31 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 24 ¶ 2. At step two, the ALJ found that plaintiff had the

---

[3] *See also* 20 C.F.R. § 404.1545(a)(1).

[4] *See also* 20 C.F.R. § 404.1545(a)(2).

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

following medically determinable impairments that were severe within the meaning of the Regulations: borderline intellectual functioning, hypertension, and depressive disorder. Tr. 24 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 25 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[6] except the claimant is limited to simple, routine, repetitive tasks, and is unable to perform high-stress work that involves assembly line pace or that requires production quotas.

Tr. 27 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 31 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of laundry folder, mail clerk, and cashier II. Tr. 32 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 1 November 2010, through the date of the decision, 9 January 2015. Tr. 32-33 ¶ 11.

## II. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456

---

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

(4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that this case should be remanded for the award of benefits or, in the alternative, a new hearing on the grounds that the ALJ erred in in assessing plaintiff's credibility and determining that plaintiff had the RFC to perform light work. The court will address each contention in turn.

## IV. ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### A. Applicable Legal Principles

The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id*. at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id*. 76 F.3d at 595. The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996))[7]; *see also* 20 C.F.R. §§ 404.1529, 416.929 (setting out factors in evaluation of a claimant's pain and other symptoms).

---

[7] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case.

It is true, of course, that "[a] party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id.* (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595. In other words, an ALJ is not "obligated to accept the claimant's statements at face value; rather, the ALJ 'must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.'" *Hyatt v. Colvin*, No. 7:14-CV-8-D, 2015 WL 789304, at *11 (E.D.N.C. 24 Feb. 2015) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2). Specifically, the Regulations require the ALJ to consider "all of the available evidence," which includes a claimant's history; the signs and laboratory findings (*i.e.*, objective medical evidence); statements about the effect of symptoms from the claimant, treating or nontreating sources, and other persons; and medical opinion evidence. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

**B.    Analysis**

The ALJ summarized plaintiff's testimony as follows:

> At the hearing, the claimant testified he lives with his 27-year old daughter and his five year old grandson. He occasionally watches his grandson, including preparing his meals. In his past work at the Cheesecake Factory and with McClane, he was unable to remember his work instructions, and was unable to remember which orders to pull. He was able to perform the work with his supervisors, but could not do the work unassisted. The claimant reported his memory, concentration, and focus went downhill after he had an aneurysm in 2008. The claimant also complained of bad eyesight, dizziness, and headaches. He stated his headaches occur approximately three times a week. His blood pressure fluctuates, which could be causing his dizziness. He went to the emergency room in December 2013 due to his headaches, and he [was] told his headaches were due to his high blood pressure. He also reported he takes

> medication for depression. He stated he experiences the symptoms of isolation, worthlessness, and distances himself from others. During a typical day, the claimant lies around the house or will walk around the yard. He is able to prepare simple meals, and drives approximately three times a week. He can vacuum the floor and wash the dishes.

Tr. 27 ¶ 5.

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 27 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 27 ¶ 5. He stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 27 ¶ 5.

> The ALJ elaborated:
>
> [T]he undersigned cannot find the claimant fully credible in his representation regarding his functional limitations. A review of the medical evidence of record fails to indicate that the claimant was ever directed to stop working. The claimant's allegations have been taken into account in limiting him to light exertional jobs with postural[8] limitations. However, the undersigned cannot find the claimant's allegation that he is unable to perform all work activity to be credible.

Tr. 31 ¶ 5. In a similar vein, the ALJ noted that "no treating physician instructed or indicated the claimant should not work, or limited the claimant's ability to work." Tr. 30 ¶ 5.

The ALJ provided specific reasons for his credibility determination that are supported by substantial evidence. Tr. 28-29 ¶ 5. With respect to plaintiff's impairments of borderline intellectual functioning and depressive disorder, the ALJ found:

> While the claimant has been diagnosed with borderline intellectual functioning, both consultative examinations [by psychologist James R. Frazier, Ph.D. on 24 July 2008 and 29 January 2013] found the claimant was capable of simple, routine, repetitive tasks. At both examinations, the claimant's judgment and

---
[8] In fact, the limitations the ALJ imposed were not postural, but mental. *See* Tr. 27 ¶ 5. This erroneous reference to postural limitations is not material.

insight were intact, and his mood and affect were reasonable. (Exhibits 2F, 3F). While the claimant was diagnosed with depression in December 2013, he reported an improvement in his mood once he began on anti-depressant medication. (Exhibit 8F). While the claimant received anti-depressive medication from a family doctor [Jessica Rodriguez, PA-C of OIC Family Medical Center][9] since December 2013, he has not received any mental health treatment from any psychologist, psychiatrist, counselor, therapist, or any other mental health provider or facility. He has not reported to any emergency or urgent care medical center complaining of depression, and has not been hospitalized or received any in-patient medical treatment for his depression.

Tr. 29 ¶ 5. The medical records underlying these findings, which the ALJ reviewed in detail, constitute substantial evidence supporting the findings. *See* Tr. 28 ¶ 5.

These records include the reports on the two consultative examinations by Dr. Frazier. Tr. 332-35; 337-42. In both reports, as the ALJ noted, Dr. Frazier found plaintiff to have short-term memory deficits, but did not find them disabling. Tr. 28 ¶ 5; 30 ¶ 5. In the 29 January 2013 report, as also noted by the ALJ, Dr. Frazier additionally found plaintiff to be somewhat depressed. Tr. 28 ¶ 5. Nonetheless, Dr. Frazier assigned plaintiff a global assessment of functioning ("GAF") score of 65 indicating, in the words of the ALJ, that "while the claimant had some mild symptoms, he was able to function generally well."[10] Tr. 28 ¶ 5. The ALJ gave Dr. Frazier's opinions significant weight. Tr. 30 ¶ 5.

---

[9] As can be seen, the ALJ erroneously refers to PA-C Rodriguez as a physician, which he does elsewhere in his decision as well. Plaintiff does not allege that this error is material, and the court finds that it is not. In its subsequent quotations from the ALJ's decision, the court has substituted "PA-C Rodriguez" for these erroneous references by the ALJ.

[10] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). The GAF scale is "intended to be used to make treatment decisions" and has "no direct legal or medical correlation to the severity requirements of social security regulations." *Powell v. Astrue*, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013). Nonetheless, it may inform the ALJ's judgment as to whether a claimant is disabled. *Kozel v. Astrue*, No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. 18 July 2012). Notably, the current, fifth edition of the DSM, which was issued on 13 May 2013 subsequent to Dr. Frazier's 29 January 2013 examination, abandoned use of the GAF scale because of "its lack of conceptual clarity . . . and questionable psychometrics in routine practice." Am. Psych. Assn., DSM-5 16 (2013). Nonetheless, in internal guidance messages, the Social Security Administration ("SSA") instructed that ALJs were to continue to treat GAF scores as opinion evidence that must be considered. *See* SSA, AM-13066, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication" (effective 22 July

Additional supporting medical records regarding plaintiff's depressive disorder were summarized by the ALJ as follows:

> During a mental status examination in February 2013 [by consulting physician Satish K. Kumar, M.D.],[11] the claimant complained of depressive symptoms. (Exhibit 5F). He sought treatment from [PA-C Rodriguez] beginning in December 2013 for his hypertension, but at this initial appointment, he also complained of a one-year history of depression. He reported he lost his job one year ago, and moved in with his daughter. He therefore was interested in starting

---

2013); SSA, AM-13066 REV, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication – REV" ("AM-13066-REV") (effective 14 Oct. 2014).
Selected GAF scores have the following meanings:

> 90-81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).
>
> 80-71 If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).
>
> 70-61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.
>
> 60-51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).
>
> 50-41 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).
>
> 40-31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).
>
> 30-21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34 (format changes from original).

[11] The report on the examination is dated 1 February 2013 (Tr. 347), although it states that the examination occurred the day before, 31 January 2013 (Tr. 347). The court has substituted the correct month in subsequent quoted references by the ALJ to the date of the examination by Dr. Kumar.

medication to help with his depression. (Exhibit 8F). At a follow-up appointment in January 2014 [with PA-C Rodriguez], he reported he was taking his medication as prescribed without any complaints, and he noted a little improvement in his mood since he started on his medication. (Exhibit 8F). He was continued on medication again at appointments [with PA-C Rodriguez] in February and April 2014. (Exhibit 8F). At an appointment in July [with PA-C Rodriguez], the claimant reported he had been out of his depressive medication for two weeks, and since he was off his depression medication, he had been more "moody." (Exhibit 9F). By October 2014, the claimant denied [to PA-C Rodriguez] any depressive symptoms, and reported he was taking his medication as prescribed. (Exhibit 10F).

Tr. 28 ¶ 5. It is, of course, well settled that if a symptom can be reasonably controlled by treatment, including medication, it is not disabling. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

With respect to plaintiff's hypertension, the ALJ found:

While the claimant has been diagnosed with hypertension, he only reported to the emergency room on one occasion due to symptoms related to his hypertension, and at this time, he was not taking any hypertensive medication. He failed to seek any medical treatment for his hypertension until December 2013, at which time, his blood pressure was elevated and he was started on medication. At subsequent visits, his blood pressure decreased, with the exception of one visit, when he had been out of his medication for over two weeks. Although his blood pressure readings during each appointment were found to be slightly elevated, his readings decreased at each visit, and his hypertension appeared to be stable.

Tr. 30 ¶ 5. As with plaintiff's borderline intellectual and depressive disorder, the medical records underlying these findings, which the ALJ reviewed in detail, constitute substantial evidence supporting these findings. *See* Tr. 29-30 ¶ 5.

The ALJ's review of the underlying records reads in relevant part:

[The claimant] underwent a consultative examination [by Dr. Kumar] in [January] 2013, at which time he complained of hypertension and a history of a rupture of aneurysm in the brain and right-sided weakness in 2008. He reported he was not under the care of a family doctor, but he would go to the emergency room whenever he needed to seek medical attention, and he would get medication from the emergency room "off and on." It was noted the claimant had a history of noncompliance. He reported he was first diagnosed with hypertension when he was admitted to the hospital for his aneurysm in 2008. The claimant stated he

> gets occasional headaches when his blood pressure was high. . . . . [H]e stated he last took medication in December 2012. . . . He was diagnosed with hypertension, uncontrolled due to his noncompliance with his medication. (Exhibit 5F).
>
> He reported to the emergency room in December 2013 complaining of a headache and dizziness. . . . His blood pressure was elevated at 184/117, and he stated he was not taking any medication. His blood pressure was lowered once he was placed on medication. He stated he was totally asymptomatic at this time. His labs were unremarkable, and his head CT showed no changes. He was therefore started on hypertension medication and discharged home. (Exhibit 7F).
>
> The claimant began treatment with [PA-C Rodriguez] in December 2013. At this time, he complained of hypertension, and a blood pressure reading was 182/104. He was started on hypertensive medication at this time. (Exhibit 5F). He was seen at follow-up appointments in January, February, and April 2014 [by PA-C Rodriguez], and at each visit, he reported he was complaint with his blood pressure medication. He also had no complaints or concerns at each visit. His blood pressure decreased at each visit, and he was continued on his medication. (Exhibit 8F). In July 2014, he was seen again [by PA-C Rodriguez], at which time, he reported being out of medication for the last two weeks because he was unable to afford his refill medications. His blood pressure at this session was 169/97. While [PA-C Rodriguez] noted the claimant's blood pressure was high today, the claimant had been out of medication for two weeks, but when he was on medication, his blood pressure was controlled at the past several appointments. (Exhibit 9F). At a follow-up appointment in October [2014] [with PA-C Rodriguez], the claimant denied any symptoms, and reported he was taking his medication as prescribed. [PA-C Rodriguez] noted his blood pressure was stable and improved. (Exhibit 10F).

Tr. 29-30 ¶ 5. The progress note on plaintiff's 5 January 2015 visit with PA-C Rodriguez, which was among the evidence plaintiff submitted for the first time to and admitted by the Appeals Council, stated that plaintiff's blood pressure was controlled. Tr. 440.

Significantly, as the ALJ recognized, medical records and plaintiff himself link his headaches to his hypertension. For example, as quoted in his summary of plaintiff's testimony, the ALJ noted that plaintiff "went to the emergency room in December 2013 due to his headaches, and he [was] told his headaches were due to his high blood pressure." Tr. 27 ¶ 5 (referencing plaintiff's testimony at Tr. 54-55); *see also* Tr. 395-402 (records of 4 Dec. 2013

emergency room admission). The testimony by plaintiff to which the ALJ was alluding read in part:

> When the headaches get so I can't bear them and stuff, I would go to the emergency room, but over the years I learned to just take Tylenol and stuff, because they keep telling me the same thing, it's my blood pressure, you know. If they do an MRI, they say they don't see nothing . . . .

Tr. 55. The ALJ also mentioned the statement by consulting examining physician Dr. Kumar in the report on his 31 January 2013 examination of plaintiff that "[h]e gets headache[s] off and on when his blood pressure is high." Tr. 29 ¶ 5 (referencing Tr. 347).

Consistent with the ALJ's review of the medical records, they do not identify plaintiff's alleged dizziness as having an underlying cause separate and apart from his hypertension. Nor do they indicate that plaintiff was prescribed a separate treatment for the alleged dizziness. Indeed, there is scant reference in the medical records to plaintiff's purported dizziness. It was noted as a complaint of plaintiff's in one of the records on his 4 December 2013 emergency room visit. *See* Tr. 395. The only other reference to dizziness during the alleged period of disability (*i.e.*, 1 November 2010 to 9 January 2015) is in the progress note on plaintiff's 3 July 2014 visit with PA-C Rodriguez. *See* Tr. 432. This reference indicated that plaintiff had no dizziness (or lightheadedness) at that visit. *See* Tr. 432.[12]

The ALJ further based his determination that plaintiff was not fully credible on plaintiff's report of his own activities. The ALJ stated:

> [T]he undersigned has considered the claimant's subjective complaints, but finds them to be exaggerated. Although the claimant reported he has been unable to work since November 1, 2010, during a consultative examination in January 2013 [with Dr. Frazier], the claimant reported he spends his day on the phone looking

---

[12] There are only two references to plaintiff's alleged dizziness in the medical records subsequent to the alleged period of disability, which plaintiff submitted for the first time to and were not admitted by the Appeals Council. The progress note on plaintiff's 8 April 2015 visit with PA-C Rodriguez states that he complained of intermittent dizziness, but denied any dizziness at that visit. Tr. 14. The other reference is in the progress note on his 9 July 2015 visit with PA-C Rodriguez, which states that he reported no dizziness (or lightheadedness) at that visit. Tr. 10.

> for a job or riding with someone looking for work. (Exhibit 3F). During this same consultative examination, the claimant also reported he babysits his grandson much of the day. (Exhibit 3F).

Tr. 30 ¶ 5.

Plaintiff challenges the ALJ's credibility determination by first summarizing plaintiff's testimony. Plaintiff then contends that the objective evidence shows that he has deficits in memory and intellectual functioning that cause him to be easily confused and unable to maintain concentration. He relies on testimony by the vocational expert that an individual who could not maintain concentration for two-hour segments to perform simple, routine, repetitive tasks would be unemployable. *See* Tr. 68.

As discussed, though, substantial evidence supports the ALJ's credibility determination. Plaintiff has not shown that the ALJ applied an improper legal standard in reaching his determination. In essence, plaintiff disagrees with the weight the ALJ accorded his testimony and the related evidence, and asks the court to reweigh this evidence in his favor. It is not, of course, the province of the court to do so.

The court concludes that the ALJ's credibility determination was in all respects proper. It accordingly rejects plaintiff's challenge to it.

## V.    ALJ'S ASSESSMENT OF PLAINTIFF'S RFC

### A.    Applicable Legal Principles

As discussed, a claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.645(a)(1). The assessment of a claimant's RFC must be based on all the relevant medical and other evidence in the record. *Id.* §§ 404.1545(a)(3), 416.645(a)(3). An ALJ's decision must state his RFC determination and provide the supporting rationale for it. *See Mascio*, 780 F.3d at 636.

Under Social Security Ruling 96-8p, a claimant's RFC signifies an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," and "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996). Thus, "[a]s defined, any assessment of a claimant's RFC is necessarily an assessment of the claimant's ability to work a forty-hour work week." *Ricks v. Comm'r of Soc. Sec.*, No. 2:09cv622, 2010 WL 6621693, at *14 (E.D. Va. 29 Dec. 2010), *rep. & recomm. adopted*, 11 Feb. 2011 Order (D.E. 16). Light work also assumes the ability to work an eight-hour workday. *See, e.g.,* Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6 (1983) ("[T]he full range of light work requires standing or walking, off and on, *for a total of approximately 6 hours of an 8-hour workday*." (emphasis added)).

**B. Analysis**

The ALJ, of course, determined that plaintiff had the RFC to perform a limited range of light work. *See* Tr. 24 ¶ 5. The ALJ's RFC determination necessarily indicates his determination that plaintiff could perform work "8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2; *see Ricks*, 2010 WL 6621693, at *14. Plaintiff argues that he is unable to perform any work because of a combination of depression and deficits in memory and concentration, which prevent him from performing work on a regular and continuing basis, and the inability to adapt to changes in work setting and routine. The contention is without merit. The evidence previously reviewed supporting the ALJ's credibility determination also constitutes substantial evidence supporting the ALJ's RFC determination.

Additional evidence supporting the ALJ's RFC determination includes the mental RFC assessments of plaintiff by nonexamining state agency consulting psychologists Ken M. Wilson, Psy.D. on 25 March 2013 (Tr. 111-12; 160-61) and Jennifer Fulmer, Ph.D. on 23 May 2013 (Tr. 126-28; 141-43) which found plaintiff able to work. While both assessments determined plaintiff to have limitations in understanding, memory, and concentration, they also found him able to understand and remember very short and simple instructions. Tr. 111-12; 126-28; 141-43; 160-61. Dr. Wilson and Dr. Fulmer further found that although plaintiff had limitations in adapting to workplace changes, he could perform work in a low-stress environment. Tr. 112; 127-28; 142-43; 161. The ALJ gave these assessments great weight. Tr. 31 ¶ 5. They are, of course, reflected in the ALJ's RFC determination, which limits plaintiff to simple, routine, repetitive tasks and low-stress work. Tr. 27 ¶ 5.

Plaintiff cites to the progress note on plaintiff's 9 July 2015 office visit with PA-C Rodriguez (Tr. 9-12) which he submitted for the first time to the Appeals Council as showing that his depression was not controlled by medication. As noted, when the Appeals Council admits additional evidence into the record before denying a claimant's request for review, the court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings." *Wilkins*, 953 F.2d at 96. At the same time, the court must not resolve conflicts in the evidence. *See Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). To properly balance its obligations to review the entire record and to refrain from fact finding, the court "should conduct a limited analysis of the additional evidence to assess whether the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Felts*, 2012 WL 1836280, at *1 (quoting

*McGinnis v. Astrue*, 709 F. Supp. 2d 468, 470 (W.D. Va. 2010) (internal quotation marks omitted); *see also Davis*, 392 F. Supp. 2d at 751.  In the event the additional evidence meets any of these criteria, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. *Felts*, 2012 WL 1836280, at *1.

Here, the Appeals Council did not admit the 9 July 2015 progress note into the record. Nonetheless, treating it as though it has been admitted, the court finds that it does not warrant remand.

The progress note postdates the ALJ's decision, issued 9 January 2015, by six months. Plaintiff has failed to demonstrate that it is relevant to the period of alleged disability at issue, just as the Appeals Council found in not admitting it into the record.

Moreover, the 9 July 2015 progress note does not establish the inability of medication to control plaintiff's depression symptoms.  In response to plaintiff's complaints that he was having symptoms of depression, including suicidal ideation, PA-C Rodriguez increased the dosage of the same medication he had been receiving (citalopram hydrobromide).  Tr. 9, 11.  Plaintiff himself reported that this medication helped his depression, albeit "slightly."  Tr. 9.  Further, in an 8 April 2015 visit, plaintiff told PA-C Rodriguez that he had been out of his medication for a month.  Tr. 13.  This break in medication further tends to undermine the relevance of the 9 July 2015 progress note to plaintiff's mental status during the period of alleged disability in issue.

The court concludes that the ALJ's RFC determination was proper.  The court accordingly rejects plaintiff's challenge to it.

## VI. CONCLUSION

For the foregoing reasons, based on its consideration of the record as supplemented by all the evidence submitted by plaintiff for the first time to the Appeals Council, the court concludes

that the Commissioner's decision is supported by substantial evidence of record and based on proper legal standards.  IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 16) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 14) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel.  Each party shall have until 17 January 2017 to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions.  *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review.  In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.  *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 3rd day of January 2017.

_____
James E. Gates
United States Magistrate Judge